IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

CRAIG E. ARNOLD,

            Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

            Defendant.

No. C13-2018

RULING ON JUDICIAL REVIEW

---

**TABLE OF CONTENTS**

I.      **INTRODUCTION** ........................................... 2

II.    **PROCEDURAL BACKGROUND** ........................... 2

III.   **PRINCIPLES OF REVIEW** ................................. 3

IV.   **FACTS** ...................................................... 4
      **A.**   *Arnold's Education and Employment Background* ............ 4
      **B.**   *Administrative Hearing Testimony* ....................... 5
      **C.**   *Arnold's Medical History* ............................... 7

V.    **CONCLUSIONS OF LAW** ................................. 12
      **A.**   *ALJ's Disability Determination* ......................... 12
      **B.**   *Objections Raised By Claimant* .......................... 14
          *1.*   *Dr. Standing's Opinions* ......................... 15
          *2.*   *Dr. Neiman's Opinions* .......................... 18
          *3.*   *Credibility Determination* ........................ 21
          *4.*   *RFC Assessment* ................................ 25
      **C.**   *Reversal or Remand* ................................... 26

VI.   **CONCLUSION** ........................................... 26

VII.  **ORDER** .................................................. 27

# I.  INTRODUCTION

This matter comes before the Court on the Complaint (docket number 1) filed by Plaintiff Craig E. Arnold on March 11, 2013, requesting judicial review of the Social Security Commissioner's decision to deny his application for Title II disability insurance benefits.    Arnold asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits.  In the alternative, Arnold requests the Court to remand this matter for further proceedings.

# II.  PROCEDURAL BACKGROUND

On April 21, 2010, Arnold applied for disability insurance benefits.  In his application, Arnold alleged an inability to work since April 16, 2010 due to low back pain, shoulder problems, and neck pain.  Arnold's application was denied on July 6, 2010.  On December 9, 2010, his application was denied on reconsideration.  On January 4, 2011, Arnold requested an administrative hearing before an Administrative Law Judge ("ALJ"). On March 30, 2012, Arnold appeared via video conference with his attorney before ALJ Eric S. Basse for an administrative hearing.  Arnold and vocational expert Roger F. Marquardt testified at the hearing.  In a decision dated May 11, 2012, the ALJ denied Arnold's claim.  The ALJ determined that Arnold was not entitled to disability insurance benefits because he was functionally capable of performing work that exists in significant numbers in the national economy.  Arnold appealed the ALJ's decision.  On January 31, 2013, the Appeals Council denied Arnold's request for review.  Consequently, the ALJ's May 11, 2012 decision was adopted as the Commissioner's final decision.

On March 11, 2013, Arnold filed this action for judicial review.    The Commissioner filed an Answer on May 30, 2013.  On July 9, 2013, Arnold filed a brief arguing that there is no substantial evidence in the record to support the ALJ's finding that he is not disabled and that he is functionally capable of performing other work that exists in significant numbers in the national economy.    On September 10, 2013, the

Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On August 15, 2013, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

## III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that

decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth
Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the
> evidence and it allows for the possibility of drawing two
> inconsistent conclusions, thus it embodies a zone of choice
> within which the [Commissioner] may decide to grant or deny
> benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland
v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th
Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial
of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.*
at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's
decision is not outside that zone of choice simply because [a court] might have reached a
different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even
if inconsistent conclusions may be drawn from the evidence, the agency's decision will be
upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v.
Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d
1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir.
2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the
decision merely because substantial evidence would have also supported a contrary
outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d
520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's
conclusion, we may not reverse even though there may also be substantial evidence to
support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Arnold's Education and Employment Background

Arnold was born in 1963. He is a high school graduate. When asked whether he
could read and understand what he was reading, Arnold responded that when his

4

concentration is good, his reading comprehension is fine, but if his concentration is bad, he has difficulty reading.

The record contains a detailed earnings report for Arnold. The report covers the time period of 1978 to 2011. From 1978 to 2010, Arnold earned between $93.24 (1978) and $37,201.47 (2007). He has no earnings since 2011.

### B. Administrative Hearing Testimony

At the administrative hearing, Arnold's attorney asked Arnold whether he could work a full-time, eight-hour per day job:

> Q: Are you able to work more than one day, eight hours a day?
> A: Maybe two, two days.
> Q: And what happens after that, if anything?
> A: I end up finding myself in bed for the next couple days I got so much pain.
> Q: Do you think you could work eight hours a day, every day?
> A: Oh, no, sir. No.

(Administrative Record at 44.)

Next, Arnold's attorney inquired about a left shoulder injury in 2009. Arnold explained that he had a work-related injury to his left shoulder, requiring two surgeries. Both surgeries were performed in 2009. Arnold's attorney further inquired whether Arnold presently had difficulties with his left shoulder. Arnold stated that he had constant sharp and dull pain in his left shoulder that radiated to his neck. Arnold also discussed a loud, high-pitched noise he hears in his head following complications from his second shoulder surgery:

> Q: Do you hear any noise?
> A: I have a loud, high pitched noise in my head, and that's 24 hours a day.
> Q: How did that start?
> A: My second surgery in my shoulder I had -- somehow they injured my neck because right after I got woke up,

5

> I couldn't move my head. I was stiff. And they had to do a radio frequency which they burnt five levels on nerves on my left side of my neck, and two days -- it took me two days after that, I had this high-pitched noise in my head that won't go away.
>
> Q: Does that make it difficult for you to pay attention and concentrate?
>
> A: Yes, sir.
>
> Q: Are you able to be in an environment where there's loud noise?
>
> A: No.
>
> Q: Do you get headaches when you have this noise?
>
> A: Yes, sir.
>
> Q: When do you get the headaches?
>
> A: Any type of activities I try doing, my arms start hurting, my neck tightens up, and it goes up into my head, and it starts bringing sharp pains.

(Administrative Record at 48-49.)

Arnold also described difficulty with low back pain. He described sharp pain starting in his low back and traveling halfway up his spine, and also down his spine into his legs and feet. Arnold stated that physical activity aggravates his back pain. For example, Arnold testified that stooping, bending, going from a sitting to standing position, and walking more than 15 minutes aggravates his back pain.

Arnold further testified that since developing his physical ailments, he has also developed depression. He described his symptoms as involving lack of energy, no interest, reduced interaction with other people, irritability, and lack of concentration. Arnold also indicated that since his physical ailments began, he has developed difficulties with his short term memory.

Arnold's attorney and Arnold had the following colloquy regarding his functional abilities:

> Q: How much do you think you can lift now on an occasional basis?
>
> A: Ten pounds, maybe less.

| Q: | How far could you carry that weight? |
|---|---|
| A: | Ten, 15 feet maybe. . . . |
| Q: | How long can you stand before you need to change positions? |
| A: | Fifteen minutes. |
| Q: | What would happen after that? |
| A: | My legs would start hurting, aching, lower back would hurt really bad, and I would have to go sit down. |
| Q: | How long can you sit at a time? |
| A: | About an hour. . . . |
| Q: | How far can you walk? |
| A: | I could walk maybe about 15, 20 minutes tops. . . . |
| Q: | Can you stoop, bend, or twist? |
| A: | No. |
| Q: | Can you reach from side to side with your left arm? |
| A: | No, sir. |
| Q: | Can you reach overhead? |
| A: | No. |
| Q: | Can you reach in front of you? |
| A: | No. |
| Q: | What about your right hand and arm? |
| A: | Right arm I can. I can lift -- I can reach out to the side and -- |
| Q: | Could you reach overhead or in front of you? |
| A: | It's hard. |

(Administrative Record at 53-55.) Arnold also indicated that he has difficulty performing household chores. For example, he stated that he can vacuum, but needs to take frequent rest breaks, about every 5 minutes. Arnold also stated that doing dishes or the laundry aggravated his physical symptoms. Lastly, Arnold testified that on many days, he stays in bed until noon or 1:00 pm due to the pain he experiences in his back, neck, shoulders, and legs.

### C. Arnold's Medical History

In 2009, Arnold underwent two separate surgeries on his left shoulder. The first surgery was performed on February 18, 2009. Arnold continued to have pain and difficulty using his left shoulder throughout 2009, and on October 28, underwent a second

surgery. Dr. David S. Tearse, M.D., performed a left shoulder arthroscopy, debridement, and distal clavicle excision. Arnold returned to work on November 9, 2009. After work, Arnold went to the emergency department at Covenant Medical Center in Waterloo, Iowa, complaining of severe pain in his left shoulder. The following day, on November 10, Dr. Tearse provided Arnold with a note restricting him to no use of his left arm at work. By May 25, 2010, Dr. Tearse provided Arnold with the following permanent work restrictions: (1) lifting no more than 10 pounds; (2) limit above shoulder reaching; (3) limit all reaching; and (4) working at waist level.

On July 6, 2010, Dr. Laura Griffith, D.O., reviewed Arnold's medical records and provided Disability Determination Services ("DDS") with a physical residual functional capacity ("RFC") assessment for Arnold. Dr. Griffith determined that Arnold could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Griffith found that Arnold could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Dr. Griffith further determined that Arnold was limited in reaching above shoulder level on the left side to occasionally. Dr. Griffith found no visual, communicative, or environmental limitations.

On November 17, 2010, Arnold was referred by DDS to Dr. Carroll Roland, Ph.D., for a psychological evaluation. Upon testing and examination, Dr. Roland diagnosed Arnold with major depressive disorder. Dr. Roland noted that Arnold endorsed symptoms of continual sadness, feelings of discouragement about his future, significant anhedonia, moderate self-dislike, mild self-criticalness, complete loss of interest in activities of daily living, significant loss of energy, moderate feelings of worthlessness, moderate increases in irritability, moderate concentration problems, and moderate fatigue.

Dr. Roland concluded that Arnold's major "deterrents to employment appear to be physical limitations and chronic pain."[1]

On December 6, 2010, Dr. Jennifer Ryan, Ph.D., reviewed Arnold's medical records and provided DDS with a Psychiatric Review Technique and mental RFC assessment for Arnold. On the Psychiatric Review Technique assessment, Dr. Ryan diagnosed Arnold with major depressive disorder. Dr. Ryan determined that Arnold had the following limitations: mild restriction of activities of daily living, no difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Ryan determined that Arnold was moderately limited in his ability to: carry out detailed instructions, maintain attention and concentration for extended periods, and respond appropriately to changes in the work setting. Dr. Ryan concluded that:

> Objective [consultative examination] findings are consistent with some limitations in ability to sustain concentration for complex instructions and tasks, and this is consistent with function information contained in the file. [Arnold] demonstrates the capacity for routine tasks. [Arnold's] statements are considered generally credible. The preponderance of the evidence contained in the file supports the assertion that [Arnold] is able to carry out simple to moderately complex instructions and perform work tasks consistent with this ability.

(Administrative Record at 562.)

On May 25, 2011, Arnold met with Dr. Richard F. Neiman, M.D., for a medical evaluation. In reviewing his medical history, Dr. Neiman noted that Arnold had back surgery and lumbar fusion in the past, right shoulder surgery in 2004, and left shoulder surgery twice in 2009. More specifically, Dr. Neiman noted that Arnold suffered from

---

[1] Administrative Record at 558.

limitations in range of motion with his left shoulder, low back pain, and neck pain. Upon examination, Dr. Neiman opined that Arnold had 25% impairment of the whole person.

On November 21, 2011, at the request of Arnold's attorney, Dr. William Crowley, M.D., filled out a "Mental Impairment Questionnaire." Referring to his treatment notes, Dr. Crowley noted that he consistently diagnosed Arnold with depression. Dr. Crowley opined that Arnold was unable to meet competitive standards in the following ability aptitudes for unskilled work: maintaining regular attendance and being punctual within customary, usually strict allowances, completing a normal workday and workweek without interruptions from psychologically based symptoms, and performing at a consistent pace without an unreasonable number and length of rest periods. Dr. Crowley also opined that Arnold's physical pain exacerbates his depression. Lastly, Dr. Crowley determined that Arnold had the following functional limitations: marked restriction of activities of daily living, marked difficulties in maintaining social functioning, and marked difficulties in maintaining concentration, persistence, or pace.[2]

On January 23, 2012, Arnold met with Dr. Farid Manshadi, M.D., for an independent physical examination. In reviewing Arnold's health difficulties, Dr. Manshadi noted that:

> Currently Mr. Arnold continues to have left-sided shoulder pain if he uses the left arm for anything. He denies any pain in the left shoulder when he is not doing anything physical. Usually the pain is sharp when he uses the left arm. He does compensate quite a bit with the right shoulder and recently has noted increased pain in the right shoulder as well. He can't lie

---

[2] On March 14, 2012, Dr. Crowley filled out an identical "Mental Impairment Questionnaire" to the questionnaire he filled out for Arnold's attorney in November 2011. *See* Administrative Record at 1199-1204. Dr. Crowley's findings in the 2012 questionnaire matched his finding from the 2011 questionnaire. The only addition to the 2012 questionnaire was Dr. Crowley's finding that Arnold suffered four or more episodes of decompensation in the past 12-month period. Dr. Crowley concluded that Arnold's impairments would be expected to last at least twelve months.

> on the left shoulder at nighttime when he sleeps. He also has
> a complaint of low back pain which is constant and he reports
> the pain is 7 out of 10. He also experiences achiness in the
> legs with activities. With activities the pain in the low back
> goes up to 10 out of 10.
>
> He rates his left shoulder pain at 5 out of 10 with usage. He
> also complains of neck pain for which he has received multiple
> injections and procedures[.] . . . He reports his neck pain at
> 4 out of 10.
>
> He also complains of depression since 2009 after his left
> shoulder was injured at work. He sees a psychiatrist and a
> psychologist for such.

(Administrative Record at 1089-1090.) Upon examination, Dr. Manshadi diagnosed

Arnold with bilateral shoulder pain with reduced range of motion, chronic low back pain

with significant reduction in range of motion, chronic neck pain with reduced neck range

of motion, depression, and bilateral tinnitus. Dr. Manshadi opined that Arnold "currently

has significant disability due to multiple conditions he is suffering from including his

shoulders as well as his neck and low back in addition to depression. His current condition

appears to make him significantly disabled to be gainfully employed in society."[3] Finally,

Dr. Manshadi provided the following restrictions for Arnold:

> My restrictions specifically would be to avoid any activity
> which requires lifting rarely of more than 10 pounds with both
> hands. He is to avoid any activity which requires repetitious
> reaching, shoulder level or overhead activities. He is also to
> avoid any activity which requires repetitious bending or
> stooping at his waist or twisting at his waist. He is also able
> to sit, stand and walk on an as needed basis.

(Administrative Record at 1092.)

---

[3] Administrative Record at 1092.

On March 26, 2012, at the request of Arnold's attorney, Dr. Larry Standing, D.O., filled out a "Physical Medical Source Statement" for Arnold. Dr. Standing indicated that he had treated Arnold 4 to 5 times per year for the past 6 to 7 years. Dr. Standing diagnosed Arnold with chronic back pain with sciatica, anxiety, and depression. Dr. Standing noted that Arnold suffers from pain in his low back that radiates to his right leg. Dr. Standing described Arnold's pain as an achy pain that rated 8 on a scale of 1 to 10 with 10 being the most pain. Dr. Standing also noted that "constant movement" made Arnold's pain worse. Dr. Standing opined that Arnold had the following functional limitations, and could: (1) walk 1.5 blocks without rest or severe pain; (2) sit for 1 hour at one time before needing to change positions; (3) stand for 15 minutes at one time before needing to change positions; (4) sit for about 6 hours total in an eight-hour workday; (5) stand for about 2 hours in an eight-hour workday; (6) never lift less than 10 pounds; (7) never climb stairs or ladders; (8) rarely stoop or crouch; and (9) occasionally twist. Dr. Standing further opined that Arnold was unable to reach in front of his body or overhead with either arm at any time during an eight-hour workday. Dr. Standing also indicated that Arnold would need to get up and walk every 45 minutes for about 15 minutes at a time. According to Dr. Standing, 25% or more of the time Arnold's symptoms would be severe enough to interfere with his attention and concentration needed to perform even simple work tasks. Lastly, Dr. Standing estimated that Arnold would miss more than four days of work per month due to his impairments or treatment for his impairments.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Arnold is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 404.1520(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42

(1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. § 404.1520(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant

work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 404.1545. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. § 404.1545.

The ALJ applied the first step of the analysis and determined that Arnold had not engaged in substantial gainful activity since April 16, 2010. At the second step, the ALJ concluded from the medical evidence that Arnold had the following severe impairments: degenerative disc disease of the lumbar spine status-post L5-S1 fusion, minimal degenerative changes to the cervical spine, degenerative joint disease of the left shoulder status-post arthroscopic interventions, obesity, and depression. At the third step, the ALJ found that Arnold did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Arnold's RFC as follows:

> [Arnold] has the residual functional capacity to perform sedentary work . . . with the following additional restrictions: occasional postural movements but no climbing ladders, ropes or scaffolds; occasional reaching overhead with the non-dominant left upper extremity; and simple repetitive tasks.

(Administrative Record at 13.) Also at the fourth step, the ALJ determined that Arnold was unable to perform any of his past relevant work. At the fifth step, the ALJ determined

that based on his age, education, previous work experience, and RFC, Arnold could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Arnold was not disabled.

### B. Objections Raised By Claimant

Arnold argues that the ALJ erred in four respects. First, Arnold argues that the ALJ failed to properly consider the opinions of Dr. Standing, his treating physician. Second, Arnold argues that the ALJ failed to properly consider the opinions of Dr. Neiman, an examining doctor. Third, Arnold argues that the ALJ failed to properly evaluate his subjective allegations of disability. Lastly, Arnold argues that the ALJ's RFC assessment is not supported by substantial evidence because the ALJ failed to include all of his functional limitations in the RFC assessment.

### 1.   Dr. Standing's Opinions

Arnold argues that the ALJ failed to properly evaluate the opinions of his treating physician, Dr. Standing. Specifically, Arnold argues that the ALJ's reasons for discounting Dr. Standing's opinions are not supported by substantial evidence in the record. Arnold concludes that this matter should be remanded for further consideration of Dr. Standing's opinions.

The ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support

15

a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.'*Id.*.); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR *96-2P*, 1996 WL 374188 (1996).

In his decision, the ALJ addressed the opinions of Dr. Standing as follows:

> The undersigned has considered the opinion solicited from
> Dr. Standing. Little weight has been accorded to the opinion,
> in part, due to the lack of treatment from said limiting factors
> or objective signs and findings that consistently support
> limitations or the medical need for accommodations such as
> elevating legs or need for assistive devices. In addition,
> Dr. Standing was one of several primary care physicians
> providing treatment to [Arnold].

(Administrative Record at 20.)

In reviewing the ALJ's decision, the Court bears in mind that an ALJ has a duty to develop the record fully and fairly. *Cox*, 495 F.3d at 618. Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quotation omitted). Furthermore, if an ALJ rejects the opinions of a treating physician, the regulations require that the ALJ give "good reasons" for rejecting those opinions. *See* 20 C.F.R. § 404.1527(d)(2). The Court finds that the ALJ has not fully met these requirements.

Here, the ALJ submits that Dr. Standing's opinions should be accorded little weight "due to the lack of treatment from said limiting factors or objective signs and findings that consistently support limitations or the medical need for accommodations such as elevating legs or need for assistive devices."[4] The Court is unconvinced by this reasoning. The ALJ points to nothing in the record to support his assertions. Moreover, the ALJ fails to address Dr. Standing's opinions with regard to Arnold's ability to: (1) walk 1.5 blocks without rest or severe pain; (2) sit for 1 hour at one time before needing to change positions; (3) stand for 15 minutes at one time before needing to change positions; (4) sit for about 6 hours total in an eight-hour workday; (5) stand for about 2 hours in an eight-

---

[4] Administrative Record at 20.

hour workday; (6) never lift less than 10 pounds; (7) never climb stairs or ladders; (8) rarely stoop or crouch; and (9) occasionally twist.[5] Additionally, the ALJ also fails to address Dr. Standing's opinions with regard to Arnold's difficulties with reaching, needing to change positions routinely from sitting to standing throughout the workday, and the effect Arnold's symptoms have on his ability to pay attention and concentrate during an eight-hour workday.[6] Furthermore, Dr. Standing has a long-term treating relationship with Arnold, lasting 6 to 7 years. Lastly, the ALJ's conclusion that "Dr. Standing was one of several primary care physicians providing treatment to [Arnold]" is more observation than reason, let alone good reason, for discounting Dr. Standing's opinions.

Therefore, the Court concludes the ALJ has failed to give "good reasons" for rejecting the opinions of Dr. Standing. *See Tilley*, 580 F.3d at 680 ("The regulations require the ALJ to 'always give good reasons' for the weight afforded to the treating source's opinion."). The Court further finds that the ALJ failed in his duty to fully and fairly develop the record with regard to Dr. Standing's opinions. Accordingly, the Court determines that this matter should be remanded for further consideration of Dr. Standing's opinions. On remand, the ALJ shall provide clear reasons for accepting or rejecting Dr. Standing's opinions and support his reasons with evidence from the record.

## 2. *Dr. Neiman's Opinions*

Arnold argues that the ALJ failed to properly evaluate the opinions of his consultative examiner, Dr. Neiman. Arnold asserts that "Dr. Neiman imposed limitations on [his] ability to move his head and neck, yet the ALJ failed to address those opinions."[7] Thus, Arnold maintains that the ALJ erred by failing to take Dr. Neiman's opinions into consideration when making his RFC determination. Arnold concludes that this matter

---

[5] *See id.* at 1222-1223.

[6] *Id.* at 1223-1224.

[7] Arnold's Brief (docket number 9) at 16.

should be remanded for further consideration of the opinions of Dr. Neiman, and how Dr. Neiman's opinions relate to his RFC.

An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 416.927(c). If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(d)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).

Furthermore, when an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697(citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

In considering a physician's RFC assessment, an ALJ is not required to give controlling weight to the physician's assessment if it is inconsistent with other substantial evidence in the record. *Strongson*, 361 F.3d at 1070; *see also Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.' *Id.*"). "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Social Security Ruling, 96-8p (July 2, 1996).

In his decision, the ALJ addressed Dr. Neiman's opinions as follows:

> The undersigned has considered the opinion of Dr. Neiman to the extent that [Arnold] would have limited ability to perform duties requiring prolonged, excessive or repetitive activities involving the left upper extremity or postural movements.

(Administrative Record at 20.) Presumably, the ALJ's statement is meant to discredit Dr. Neiman's opinions. However, this statement fails to consider, let alone address, any of Dr. Neiman's opinions regarding Arnold's functional abilities or limitations.[8] For example, the ALJ offers no discussion of Dr. Neiman's opinion that Arnold suffered from a 25% impairment of the whole person, including difficulties with his back, shoulders, and neck.[9]

Having reviewed the entire record and considered the opinions presented in Dr. Neiman's evaluation, the Court believes that the ALJ's failure to fully address Dr. Neiman's opinions draws into question the ALJ's RFC assessment and whether the

---

[8] *Compare* Administrative Record at 20 (ALJ's decision) with 987-992 (Dr. Neiman's evaluation).

[9] Administrative Record at 989-992.

ALJ's RFC is supported by substantial evidence. *See Guilliams*, 393 F.3d at 803. Significantly, the ALJ offered no reasons for accepting or rejecting Dr. Neiman's opinions. Instead, the ALJ simply states that he considered Dr. Neiman's opinions, and refers to Arnold's "limited" ability to engage in repetitive activities. However, the ALJ failed to address or explain the relationship between Dr. Neiman's opinions and Arnold's limited abilities, let alone address such opinions and limitations with regard to Arnold's RFC assessment. The Court concludes that the ALJ failed in his duty to fully address, let alone resolve, any conflicts, if any, between Dr. Neiman's opinions and the record as a whole. *See Wagner*, 499 F.3d at 848; *see also* Social Security Ruling, 96-8p (July 2, 1996) ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). The Court also finds that the ALJ failed to fully and fairly develop the record with regard to Dr. Neiman's opinions. *See Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007) (providing that an ALJ has a duty to develop the record fully and fairly). Accordingly, the Court finds that this matter should be remanded for further consideration of Dr. Neiman's opinions, including consideration of how Dr. Neiman's opinions relate to Arnold's RFC determination.

### 3. *Credibility Determination*

Arnold argues that the ALJ failed to properly evaluate his subjective allegations of disability. Arnold maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Arnold's testimony, and properly evaluated the credibility of his subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v.*

*Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective

testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In his decision, the ALJ determined that:

> Status-post surgical interventions, [Arnold] was released to return to work and demonstrated the ability to work with restrictions. With the exception of the left shoulder, diagnostic imaging studies fail to support progressive degenerative changes to the cervical or lumbar spine. The record evidenced a positive response to medication management as well as physical therapy and acupuncture. Although [Arnold] demonstrated decreased range of motion, neurological examinations have been largely intact. At one point or another in the record, either in forms completed in connection with the application, in medical reports or in testimony, [Arnold] continued to engage in a variety of activities when in his best interest or motivated to do so including participating in household chores and yard work, helping with the in-home daycare, part-time employment, driving, shopping and gambling at the casino. For the aforementioned reasons, the undersigned finds [Arnold] less than fully credible.

(Administrative Record at 20.)

In his decision, the ALJ properly set forth the law for making a credibility determination under the Social Security Regulations.[10] The ALJ also thoroughly addressed each *Polaski* factor and explained his reasoning for finding Arnold's subjective allegations of disability less than credible.[11] Under such circumstances, the Court would normally affirm the ALJ's credibility determination. The Court is reluctant to affirm the ALJ's credibility determination in this instance, however, because the ALJ's decision relies heavily on the ALJ's perceived lack of limitations from physical impairments for Arnold.

---

[10] *See* Administrative Record at 19.

[11] *Id.* at 20.

As discussed in sections *V.B.1* and *V.B.2* of this decision, the ALJ failed to fully and fairly develop the record and properly consider the opinions of two physicians, Dr. Standing and Dr. Neiman. Both of these physicians opined that Arnold had serious limitations due to physical impairments.[12] Furthermore, as Arnold points out in his brief, his part-time work activity is very limited and consists of sitting in a car and checking officials into UNI football and basketball games.[13] This is not a full-time job, and Arnold is afforded the opportunity get out of his car and move around out will. This job is further accommodated for Arnold's limitations, as he has no lifting or physical activity requirements.[14] For this work, Arnold earns less than $4,700 per year. The Court concludes that Arnold's limited work activity does not demonstrate that he has "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *McCoy v. Schweiker*, 683 F.2d 1138, 1147 (8th Cir. 1982). Similarly, Arnold's ability "to engage in some life activities, however, does not support a finding that [he] retains the ability to work." *Forehand v. Barnhart*, 364 F.3d 984, 988 (8th Cir. 2004).

In conclusion, having reviewed the entire record, the Court believes that in remanding this matter for further consideration of the opinions of Dr. Standing and Dr. Neiman, the ALJ should also further consider Arnold's allegations of pain and disability in light of his reconsideration of Dr. Standing's and Dr. Neiman's opinions. *See Wildman*, 596 F.3d at 968 (providing that an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole"); *Finch*, 547 F.3d at 935 (same); *Lowe*, 226 F.3d at 972 ("The ALJ may not discount a claimant's complaints solely

---

[12] *See* Administrative Record at 987-992 (Dr. Neiman's evaluation); 1221-1224 (Dr. Standing's opinions).

[13] *See* Arnold's Brief (docket number 9) at 24-25.

[14] *See* Administrative Record at 304 (letter from Arnold's supervisor at UNI).

because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."); *see also Cox*, 495 F.3d at 618 (providing that an ALJ has a duty to develop the record fully and fairly). Therefore, the Court remands this matter for further development of Arnold's credibility determination.

### 4. RFC Assessment

Arnold argues that the ALJ's RFC assessment is not supported by substantial evidence in the record because the ALJ failed to consider all of his functional limitations. Specifically, Arnold argues that when determining his RFC assessment, the ALJ failed to address and consider all of the medical evidence in the record which supports significant functional limitations caused by his back, neck, and shoulder pain, including the opinions of his treating and examining doctors. Arnold maintains that this matter should be remanded for further development of his RFC.

An ALJ has the responsibility of assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). However, "RFC is a medical question, and an ALJ's finding must be supported by some medical evidence." *Guilliams*, 393 F.3d at 803 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)). In considering medical evidence, an ALJ may "'reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting *Pearsall*, 274 F.3d at 1219).

In section *V.B.1* and *V.B.2*, the Court determined that remand was necessary because the ALJ failed to fully and fairly develop the record with regard to the opinions of Dr. Standing and Dr. Neiman, a treating doctor and an examining doctor respectively. Because the ALJ did not fully and fairly develop the record with regard to Dr. Standing's and Dr. Neiman's opinions, the Court finds that the ALJ's RFC assessment is not based on all of the relevant evidence. *See Guilliams*, 393 F.3d at 803. Accordingly, the Court determines that remand is necessary in order that the ALJ make his RFC assessment for Arnold based on all the relevant evidence, including the opinions of Dr. Standing and Dr. Neiman.

### C.  Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with our without remanding the cause for a rehearing.

42 U.S.C. § 405(g).  The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled).  In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127.  Instead, the ALJ simply failed to: (1) fully and fairly develop the record

26

with regard to the opinions of Dr. Standing and Dr. Neiman; (2) fully and fairly develop the record with regard to Arnold's credibility; and (3) base his determination of Arnold's RFC on all the relevant evidence.

## VI.  CONCLUSION

The Court concludes that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ shall provide clear reasons for accepting or rejecting Dr. Standing's and Dr. Neiman's opinions and support his reasons with evidence from the record. The ALJ must also consider all of the evidence relating to Arnold's subjective allegations of disability, and address his reasons for crediting or discrediting those allegations, particularly in light of his reconsideration of Dr. Standing's and Dr. Neiman's opinions. Finally, the ALJ must also make his RFC determination based on all the relevant evidence, again, including the opinions of Dr. Standing and Dr. Neiman.

## VII.  ORDER

For the foregoing reasons, it is hereby **ORDERED**:

This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this _17th_ day of December, 2013.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA